# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ANWAR M. IBRAHIM,**                    Chapter 13
    Debtor                         Case No. 16-13549-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The contested matter before the Court for determination is the Motion filed by the Debtor, Anwar M. Ibrahim (the "Debtor"), for Damages for Violation of the Automatic Stay.[1]  Shortly after filing his original motion pro se, the Debtor engaged counsel, who then filed a "Motion for Leave to Supplement Motion for Sanctions for Violation of the Automatic Stay" (the "Stay Violation Motion") with respect to real property located at 263 Pearl Street, Malden Massachusetts which the Debtor listed on Schedule A/B: Property (the "Property').  In the Stay Violation Motion, the Debtor averred that Goshen Mortgage REO, LLC ("Goshen") willfully

---

[1]  The Debtor initially filed his motion pro se on March 6, 2017 and denominated it "Emergency motion for an Injunction/Restraining Order and hearing for violations."  In an order dated the same day, the Court noted that a request to obtain an injunction must be made through an adversary complaint under Fed. R. Bankr. P. 7001(7), adding that it would construe the Debtor's motion as a motion for damages under 11 U.S.C. § 362(k) for violation of the automatic stay.

violated the automatic stay by continuing, after the commencement of this case on September 14, 2016, with a post-foreclosure eviction action that it had commenced prepetition against the Debtor and his adult children on June 20, 2016 in Malden District Court, Department of the Massachusetts Trial Court (the "Fourth Eviction Action"). According to the Debtor, numerous "Status Review" hearings held by the Malden District Court after the filing of his Chapter 13 petition were willful violations of the automatic stay by Goshen that caused him actual damages. The Debtor seeks compensation for both his attorneys' fees and for emotional distress, as well as punitive damages, under 11 U.S.C. § 362(k).

Goshen filed an opposition to the Stay Violation Motion in which it denied any violation of the automatic stay, and further contended that it did not seek judgment against the Debtor postpetition. It maintained that the scheduling of the numerous postpetition status conferences in the Malden District Court was due to the presence of other defendants, namely, the Debtor's adult children, as well as issues regarding the pendency and effect of the Debtor's bankruptcy case.

On May 3, 2017, this Court determined the Stay Violation Motion and Goshen's Opposition constituted a contested matter and that, pursuant to Fed. R. Bankr. P. 9014(c), Part VII of the Federal Rules of Bankruptcy Procedure governing adversary proceedings applied. The Court also entered a Scheduling Order setting discovery and other deadlines. On May 8, 2017, the Court scheduled an evidentiary hearing for November 14, 2017 to determine the merits of the Stay Violation Motion. The parties, however, did not comply with the Scheduling

2

Order.  Moreover, counsel to the Debtor sought a continuance of the trial which the Court granted.  Goshen then filed a "Motion for Reconsideration of Trial Continuance and Further Request for Relief," as well as a "Motion for Entry onto Premises for Limited Purpose of Servicing Heating System."

On November 9, 2017, the Court held a hearing to consider the outstanding motions filed by the parties.  The Court scheduled the evidentiary hearing on the Stay Violation Motion for December 12, 2017 and determined that the only issues were whether the automatic stay was violated, and if so, the extent of the Debtor's damages. The Court also granted Goshen's Motion for Entry onto Premises with conditions.

This Court conducted an evidentiary hearing in this contested matter on December 12, 2017 at which three witnesses testified:  the Debtor, a constable who served an eviction execution on the Debtor in 2010, and Attorney Daniel Murphy, who represented JPMorgan Chase Bank, National Association ("JPMorgan Chase") in an eviction action in which the Debtor was a named defendant.  The Debtor introduced into evidence a single exhibit; Goshen introduced into evidence 18 exhibits.  Based upon the evidence adduced at trial, the Court now makes the following findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

## II. PROCEDURAL HISTORY

The Debtor filed a Chapter 13 petition on September 14, 2016.  On the petition he listed his residential address as 263 Pearl Street, Malden,

3

Massachusetts.  He listed his first name as Anwar and his last name as Ibrahim, although at the trial, the Debtor indicated that his first name is Ibrahim and his last name is Anwar and requested that he be called "Mr. Anwar."

On October 21, 2016, the Debtor filed his Schedules and Statement of Financial Affairs and other bankruptcy documents.[2]  He signed his petition, "Declaration About an Individual Debtor's Schedules," and Statement of Financial Affairs under the penalty of perjury.  As noted above, on Schedule A/B: Property, the Debtor listed an ownership interest in the entire Property with a current value of $500,000.00.  He did not disclose that the Property was a condominium or that there were two units in the building.  On Schedule A/B, the Debtor, in response to question 33 regarding whether he had any claims against any third parties, answered "No."   On Schedule C: The Property You Claim as Exempt, the Debtor claimed the entire Property as exempt to the extent of $500,000.00 pursuant to the Massachusetts homestead statute, Mass. Gen. Laws c. 188 §§ 1, 3.

On Schedule D: Creditors Who Have Claims Secured by Property, the Debtor listed Goshen as the holder of a claim secured by the Property.  In Column A, he listed the amount of the claim at $0.00, in Column B, he listed the value of the collateral supporting the claim at $500,000.00, and, in Column C, he listed the unsecured portion of the claim at $0.00.  He also checked the box indicating that

---

[2] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

the secured claim was disputed.   He did not describe the nature of the lien and failed to check any of the boxes containing descriptions of liens.  He represented that that he was the only debtor owing the debt.

On Schedule D, the Debtor also listed a secured claim held by Guidance Residential, LLC ("Guidance") in the amount of $600,000.00 secured by the Property.  He listed the value of the collateral at $500,000.00, indicating that the unsecured portion of the claim was $100,000.00.   He further represented that he owed that debt with a nondebtor, that the claim was disputed, and that the nature of the lien was both an agreement and a first mortgage.   On Schedule H:  Your Codebtors, the Debtor listed 2004-0000446, LLC as a codebtor with respect to the Guidance mortgage.

In Schedule I: Your Income, the Debtor represented that he was not employed and earned no monthly wages, salary or commissions; he listed a single source of monthly  income from "Family support payments that you, a non-filing spouse, or a dependent regularly receive," in the amount of $2,500.00; on Schedule J: Your Expenses, he indicated that he had no expenses relating to "rental or home ownership expenses for your residence," although he listed $100.00 for "property, homeowner's, or renter's insurance: and $200.00 for "Homeowner's association or condominium dues."  His other expenses for himself and his two teenage dependents[3] related to "electricity, heat, natural gas" ($200.00), water, sewer,

---

[3]  At the trial the Debtor testified that he has four children: ages 22, 20, 18 and 16.

garbage collection ($100.00), as well as expenses for telephones, food, clothing, transportation, and the like.  The Debtor's expenses totaled $2,275.00.  The Debtor did not disclose any income from employment for his spouse on Schedule I, although as noted below, he indicated that he was married; he did not list his spouse as a dependent on Schedule J.

In response to questions on the Statement of Financial Affairs ("SOFA"), the Debtor responded that he is married, and had lived in his current residence during the past three years.  In Part 4 of his SOFA, in response to question 9, the Debtor stated that he was a party to a lawsuit within one year prior to the commencement of his bankruptcy case, referencing a pending "Postforeclosure [sic] Eviction" action brought by Goshen in the Malden District Court, adding the following:

> Related court dates include October 25 (motion hearing for possession as to debtor's children) and November (post-foreclosure eviction of debtor) Dates set purant [sic] to creditor's representation that automatic stay not applicable [sic].[4]

---

[4] The Malden District Court docket reflects the following entries on October 25, 2016:  1) "Event Resulted [sic] The following event: Motion Hearing (CV) scheduled for 10/25/16 09:00 AM has been resulted as follows:  Result: Held," and 2) "Misc Entry: No Action Taken-No Parties."  Under the headings "Event Scheduled" and "Event Resulted," the court scheduled and continued a jury trial numerous times beginning on July 22, 2016.  The October 20, 2016 docket entry reflects that a jury trial was continued to November 17, 2016; the November 17, 2016 docket entry reflects that a jury trial was "Held," although, in fact, there was no evidence that such a jury trial took place.  Instead, on November 17, 2016, a Status Review hearing was continued to January 12, 2017 and, thereafter, to February 16, 2017, March 2, 2017, March 6, 2017, and March 8, 2017.  Neither party explained the significance of the terminology used by the Malden District Court.

In Part 7 of his SOFA, in response to Question 19, relating to transfers of property within 10 years before the commencement of his bankruptcy case to a self settled trust or similar device, the Debtor answered "yes."  He identified the transferee as the 263 Pearl Street Condominium Trust, the date of the transfer as October 7, 2008, and described the property transferred and its value as follows: "Deeds purporting to creating [sic] the above-referenced Trust are recorded with the South Middlesex Registry of Deeds.  However, Debtor disputes the validity of the conveyances, and avers that [sic] were made without Debtor's authority or knowledge."

In Part 9 of his SOFA in response to question 23, relating to "Property You Hold or Control for Someone Else," the Debtor indicated that he held a "television, computer, exercise bicycle – left by former tenant" and that the property was owned by Abdelkader Orizzi, whose address he listed as 263 Pearl Street, Malden, MA 02148 - - the same address as the Debtor's residence.

The Debtor filed a Chapter 13 Plan on October 21, 2016.  He proposed to pay the trustee $249 per month over 36 months.  He did not propose to treat or pay any secured claims in his plan; he proposed to pay a five percent dividend to holders of unsecured claims, which totaled $21,205.50.  In addition to moving to dismiss the Debtor's Chapter 13 case, the Chapter 13 Trustee objected to confirmation of the Debtor's plan, asserting that 1) the plan failed to treat the mortgage claims listed on Schedule D, and 2) the Debtor had not submitted evidence of the value of his Property, which also was the subject of the Chapter 13

7

Trustee's objection to the Debtor's claimed homestead exemption.  In her objection to the Debtor's claimed homestead exemption, the Trustee maintained that the Debtor was not an owner of the Property for the purposes of Mass. Gen. Laws ch. 188, § 1 because the Property had been foreclosed prepetition.

On November 28, 2016, the Debtor filed Amended Schedules A/B, C, D, E/F, I and J.  In Amended Schedule A/B, in response to question 34 "Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims," the Debtor listed "Counterclaims against Goshen Mortgage REO, LLC in Malden District Court action 11SU00365" with a value of $5,000.00.   In Amended Schedule C, he claimed as exempt the counterclaims against Goshen in the sum of $5,000.00 pursuant to Mass. Gen. Laws ch. 235, § 34(17).

At a hearing held on November 29, 2016, the Court sustained the Trustee's objection to confirmation.  With respect to the Debtor's Amended Schedule C and the Trustee's amended objection to the Debtor's homestead exemption claim, the Court ordered the Debtor to file a response by December 16, 2016.  Addressing Debtor's counsel's arguments that the prepetition foreclosure was wrongful and invalid, the Court ruled that such allegations required the commencement of an adversary proceeding, and ordered the Debtor to file an adversary complaint by January 6, 2017.  In addition on November 29, 2016, the Court sustained the Chapter 13 Trustee's objection to his Chapter 13 plan and ordered him to file an amended plan within 30 days.

On December 28, 2016, the Debtor moved to extend the time until January 13, 2017 to file his amended Chapter 13 plan. The Court granted the motion. Approximately one week after the Court granted the Debtor's motion, his attorney moved to withdraw as his counsel. The Court granted the Debtor's attorney permission to withdraw. On January 13, 2017, the Debtor, appearing pro se, moved for a further extension of time to file an amended plan. On January 17, 2017, the Debtor, again appearing pro se, filed an amended Chapter 13 plan, as well as amended Schedules. On January 26, 2017, the Chapter 13 Trustee objected to the Debtor's amended plan, as well as to his claimed homestead exemption.[5] The Court sustained the Trustee's objection to the amended Chapter 13 plan on

---

[5] The Trustee averred the following:

> . . . The Declaration of Homestead recorded on August 17, 2010 does not refer to a unit number and purports to cover the property in its entirety. However, the Debtor did not own Unit 1 at the time the Declaration of Homestead was recorded as it was 1) transferred to Muna Ibrahim, and 2) subsequently transferred by foreclosure deed.

> . . . At the time that the Debtor recorded the Declaration of Homestead Unit 2 was still titled in the Debtor's name and was purportedly the Debtor's residence. However, on September 15, 2010, a foreclosure deed was recorded in the Middlesex County Registry of Deed with respect to Unit 2. Therefore, the Debtor does not currently hold title to the property and did not hold title to the property at the time of filing.

The Court heard the Trustee's homestead objection on March 17, 2017 and ordered the Debtor to file a supplemental response by March 30, 2017 which was to include "a copy of a title search with respect to the Property and copies of all relevant documents." The Debtor has never complied with that order.

February 27, 2017 and ordered the Debtor to file a further amended Chapter 13 plan within 30 days. The Debtor, however, did not file an amended plan within 30 days, as ordered, and he never filed an adversary complaint against Goshen or any other holder or assignee of a mortgage for wrongful foreclosure.

On March 6, 2017, the Debtor filed the "Emergency motion for an Injunction/Restraining Order and hearing violations," which, as supplemented by the Stay Violation Motion, is now before the Court. After Goshen filed its own Pretrial Memorandum, the Court ordered the parties to comply with the scheduling order and to file a Joint Pretrial Memorandum. Although the parties filed a Joint Pretrial Memorandum, they did not stipulate to any facts.

## III. FACTS

At the outset, the Court is compelled to observe that both parties to this contested matter failed to present an organized or cogent chronology of pertinent facts. As the moving party, however, the Debtor had the burden of establishing sufficient facts to enable this Court to determine that Goshen willfully violated the automatic stay and that he is entitled to damages under § 363(k) for any such stay violation.

The Debtor purchased the Property, a two-family home, in early 2008 from an individual whose name he spelled at trial as "Tly Zewd."[6] The Property had

---

[6] In the Joint Pretrial Memorandum, the Debtor and Goshen referred to a potential witness by the name of "Tilaye Zewude," but she was not called as a witness. The Chapter 13 Trustee in her objection to the Debtor's homestead exemption stated: "The Declaration of Homestead refers to a deed recorded on

two units, one on the first floor and one on the second floor.  The Debtor testified that he financed the purchase with a mortgage from Guidance.   The Debtor also testified that because his religion prohibits payment of interest, Guidance became his partner in the transaction.  The Debtor, however, did not testify or otherwise disclose specific details about the purchase and financing of the Property at trial. A review of several exhibits submitted by Goshen reveals that the Debtor financed the purchase with a mortgage loan in an unknown amount and granted a mortgage to an entity described in subsequent foreclosure notices as "2004-0000446, LLC."  According to the Debtor, whose testimony was vague, conclusory, and difficult to follow because of multiple eviction actions, bankruptcy cases,[7] and mortgage assignments, the 2004-0000446, LLC mortgage was assigned to Guidance.[8]  As noted above, the Debtor described Guidance as his partner with respect to ownership of the Property.[9]

---

February 28, 2008 which is a deed from Tilaye Zewude to the Debtor and 2004-0000446, LLC as tenants in common."

[7] The Debtor commenced a Chapter 13 case on June 17, 2010.  That case was dismissed on July 11, 2010.

[8] The record reflects the assignment occurred on February 5, 2008.

[9] The Debtor testified as follows:

>  He -- he called it a mortgage, but it not – not mortgage. It's my -- my Guidance, my partner, my partner because I don't want an interest. Guidance say become my partner nearby. Your name, a company name in the paper and the partner. You pay -- it pay us.

In October of 2008, as evidenced by a recorded Master Deed dated October 6, 2018 and recorded on October 7, 2008, the Property was converted into two condominiums, designated Units 1 and 2, although the Debtor testified that the condominium conversion was in 2007. The Debtor hired Attorney Daniel Braese to draft condominium documents.[10]

A. Unit 1

The Debtor deeded Unit 1 to Muna Ibrahim, on October 6, 2008, for stated consideration of $216,600.00.[11] She granted a mortgage on Unit 1 to Mortgage Electronic Registration Systems, Inc. ("MERS"), although her mortgage to MERS was dated February 16, 2007 [sic].[12] Goshen has made vague allegations in

---

Goshen's Exhibit 1 substantiates the Debtor's belief in part as it contains a paper describing "The Declining Balance Program" offered by Guidance, which "was developed in close cooperation with Guidance's Sharia Supervisory Board" and was "formally certified for Sharia compliance." Although Guidance was a "co-owner" it retained the right to foreclose the co-owned property and "sell the property in order to reclaim its rights."

[10] Attorney Braese's name is spelled incorrectly in the transcript. During the trial, the Debtor made vague allegations of misconduct by Attorney Braese, but he submitted no evidence whatsoever at trial to support those allegations.

[11] In Answers to Interrogatories filed in the the Second Eviction Action, discussed below, the Debtor, under penalties of perjury, represented that the purchase price "was sent completely to Guidance by Mr. Daniel Baese [sic]. I don't have any information regarding a mortgage on Unit 1 or hold [sic] by Muna Ibrahim, I only signed my mortgage when I bought my property in 2008." At trial, he denied the accuracy of his answer. Indeed, despite signing the Responses, he denied every seeing them.

[12] The Debtor testified that he acquired the Property in early 2008; he executed a mortgage to 2004-0000446, LLC on February 25, 2008, and the condominium was created by Condominium Master Deed dated October 6, 2008. The Notice of

12

pleadings that this mortgage was "fraudulent," but introduced no evidence at trial to support those allegations.  Nevertheless, on January 26, 2010, the then holder of the mortgage by assignment from MERS, JPMorgan Chase, conducted a foreclosure sale of Unit l, and, on March 4, 2010, it deeded Unit 1 to Federal National Mortgage Association ("Fannie Mae") for $193,135.49.

Fannie Mae commenced a summary process action in Malden District Court on April 12, 2010, Case No. 1050 SU 000222 (the "First Eviction Action") against Muna Ibrahim and the Debtor with respect to Unit 1 through which it sought to evict them as the occupants of Unit 1.  Muna Ibrahim filed an Answer in which she asserted a number of defenses, including that the tenancy was not properly terminated, that it was unfair to evict her, that the foreclosure action was improper, and that she was injured and had two elderly and disabled family members living with her.  Muna Ibrahim acknowledged in the Answer that the Debtor was "the former owner" and further stated that she had filed complaints with the Comptroller of the Currency about the foreclosure.

After several continuances, the Malden District Court entered a default on June 17, 2010 against both Muna Ibrahim and the Debtor and granted Fannie Mae judgment for possession on June 18, 2010; the court did not enter a money judgment.  It issued an "Execution for Possession" on June 28, 2010 against the

---

Mortgagee's Sale of Real estate provides:  "By virtue and in execution of the Power of Sale contained in a certain mortgage given by Muna Ibrahim and Muna Ibrahim [sic] to [MERS] dated February 16, 2007 . . . ."

Debtor and as well as one for Muna Ibrahim.  Although Muna Ibrahim had filed an Answer, the court docket reflects that both she and the Debtor were defaulted, presumably for failure to appear at a hearing scheduled for June 17, 2010.  The Malden District Court refused to vacate the defaults.  Both Muna Ibrahim and the Debtor filed motions to remove the defaults entered against them, but the Malden District Court denied both motions on July 8, 2010 and July 14, 2010, respectively. The docket reflects the following entry: "Execution Writ for possession returned satisfied in full" on July 30, 2010.

Nicola Nicosia, the constable who served the execution for possession in the First Eviction Action, testified that upon arriving at the Property, the Debtor appeared and directed him to the cellar, which the Debtor described as Unit 1. Nicosia was incredulous that the cellar was Unit 1 and called the attorney who had hired him to serve the execution for possession.  As a result of the attorney's instructions, Nicosia and his staff removed the furniture from the first floor unit only; they did not move anything from the cellar.  Nicosia testified that he and his staff moved the furniture from the first floor unit to the second floor unit, presumably Unit 2, pursuant to a verbal agreement with the Debtor.

On August 31, 2015, JP Morgan Chase executed a Release Deed for Unit 1 in favor of Goshen for $126,000.00, although it would appear that it had relinquished its interest in Unit 1 in 2010 when it deeded Unit 1 to Fannie Mae.

Attorney Daniel Murphy testified that, after it conducted a foreclosure sale with respect to Unit 1, JP Morgan Chase commenced another eviction action

14

against the Debtor and other occupants of Unit 1. Attorney Murphy testified that the defendants, including the Debtor, answered the complaint and claimed to be "bona fide tenants." Accordingly, because it had failed to satisfy certain predicates to the relief it sought, JP Morgan Chase caused the complaint to be dismissed. According to Attorney Murphy, JPMorgan Chase also filed a complaint for a preliminary injunction to obtain access to Unit 1 in September of 2014, but its counsel then realized that an eviction judgments for Unit 1 had issued and that it would have no obligation under the state sanitary code to correct any conditions relative to Unit 1 as the occupants were not tenants but the Debtor and his family.[13]

B. Unit 2

In early 2013, Guidance commenced an eviction action in Malden District Court (the "Second Eviction Action"), Case No. 13-SU-249, through which it sought to evict both Muna Ibrahim and the Debtor from Unit 2. Goshen purchased the mortgage during the pendency of the Second Eviction Action, resulting in its dismissal. In Responses to Guidance's Interrogatories filed in the Second Eviction action, the Debtor stated that he resided in Unit 2. He further stated that he bought the two family dwelling in 2008, financed the purchase with a mortgage to Guidance, and, in 2009, employed an attorney to convert it to condominiums, although the Condominium Master Deed was recorded on October 7, 2008, one

---

[13] Attorney Murphy's testimony was confusing at best in view of the deed from JP Morgan Chase to Fannie Mae. Moreover, neither party introduced a docket number for an action commenced by JP Morgan Chase in the Malden District Court.

day after the Debtor executed it.  According to the Debtor, he fell behind on mortgage payments and Guidance conducted a foreclosure sale of the Property. Guidance executed a Foreclosure Deed on September 14, 2010 to Federal Home Loan Mortgage Corporation for $305,999.00.

The Debtor's testimony and Responses to Interrogatories are unclear as to whether proceeds from the sale of Unit 1 to Muna Ibrahim were remitted to Guidance.  The Debtor stated in his Responses that he believed that he was only obligated on the mortgage with respect to Unit 2, although he acknowledged that Guidance "foreclosed the entire house."

Goshen brought an eviction action against the Debtor and Muna Ibrahim on May 12, 2014 (the "Third Eviction Action"), Case No. 1450 SU 000268, in which it claimed it was the current and lawful owner of Unit 2 pursuant to a "Grant Deed Without Warranty" from Guidance, dated May 29, 2013, for a stated consideration of $125,000.00.  It asserted that the eviction was warranted because of "failure to make any payments since 2009 [which] resulted in foreclosure, post foreclosure eviction, tenant at sufferance."  It also referenced entitlement to use and occupancy from June 2013 in the monthly sum of $1,500.00.  In the Third Eviction Action, the Debtor filed an Answer and counterclaims.  He contended that the foreclosure by Guidance was wrongful, that there were deficiencies in the foreclosure process, that the notice to quit was defective, and that he had counterclaims for possession and violations of Mass. Gen. Laws ch. 93A.  He also sought additional time to move in the event the court were to award Goshen possession.

16

The Malden District Court awarded Judgment for Possession of Unit 2 on April 25, 2015 and issued an execution on June 4, 2015. The Debtor filed a motion to stay the execution. After a hearing, the court denied the motion to stay. Thereafter, on July 14, 2015, the "Execution Writ for Possession was "returned satisfied in full."

On June 20, 2016, Goshen filed another summary process action in Malden District Court against "Ibrahim, Anwar," and the Debtor's adult children, "Mohamed, Anwar," and "Sabah, Anwar," Case No. 1650 SU 000365 (the "Fourth Eviction Action"). The Debtor testified that Mohamed and Sabah are his grown children who live with and support him, although which unit they occupy was not entirely clear. The Debtor testified as follows:

> Q. . . .They all live with you in Unit 1?
> A. Yes.
> Q. Is anybody living in Unit 2 now?
> A. Yes. We have Unit 2 because in the trustee case hearing, Mr. Gainor asked me if the bankruptcy case is for the whole house and we answer "yes" and he don't object and he sent us a mortgage statement for the whole house, so no problem. . . .

Neither party introduced the complaint or other pleadings in the Fourth Eviction Action. The Debtor, however, introduced the docket into evidence. The Debtor testified "Upstair [sic], number two, Apartment 2, we don't move until after bankruptcy." It is unclear whether the Fourth Eviction Action relates solely to Unit 1 or involves Unit 2 as well as the defendants' addresses were listed as Unit 1, but the original mortgage assigned to Goshen from Guidance covered the entire Property, as it preceded the execution of the Condominium Master Deed. The

Malden District Court docket reflects that the Debtor and his children were represented by Attorney Elliot Savitz. It appears that the Debtor answered the complaint, and Goshen filed responses to the Debtor's answer on August 3, 2016. A jury trial was scheduled and continued several times. A default was entered against Anwar Mohamed and Anwar Sabah on September 15, 2016. One day later, on September 16, 2016, the court entered judgment for Goshen against "Mohamed, Anwar / Sabah, Anwar" for "possession only." On September 21, 2016, the Debtor filed a Suggestion of Bankruptcy. On October 6, 2016, the court entered a judgment for possession and rent in the sum of $17,281.28 against Anwar Mohamed and Anwar Sabah.

Although the Debtor filed a Suggestion of Bankruptcy on September 21, 2016, as well as another one on October 18, 2016, in the Fourth Eviction Action, the docket reflects the scheduling of certain events and that such events were held on September 22, September 23, and October 6, 2016. On October 6, 2016, it appears that the Court denied a motion to remove the default as to Mohammed and Sabah, although the docket does not reflect the filing of such a motion. Also, on October 6, 2016, the Court allowed a motion to assess damages and, as noted above, on the same date, entered judgment for "Groshen Mortgage REO LLC" [sic] for possession and rent against "Mohamed, Anwar/Sabah, Anwar" in the sum of $16,500 plus $195 in filing fees for a total judgment of $17,281.28. There is a further entry on the docket on October 6, 2016 as follows: "Further Orders: JURY TRIAL DATE DOES NOT APPLY TO ANWAR MOHAMED AND ANWAR SABAH."

18

On October 17, 2016 the Debtor filed a Motion for Reconsideration. The relief requested by the Debtor in his motion is unclear, although it is likely that he sought to vacate the judgment against his children. With respect to the Debtor's second Suggestion of Bankruptcy filed on October 18, 2016, the docket reflects that it was coupled with a motion for additional time to file Chapter 13 documents. On October 20, 2016, the Court rescheduled a trial that had been scheduled for that day to November 17, 2016. On October 25, 2016, the docket reflects the following entry: "No Action Taken – No Parties." The docket also reflects two confusing entries for November 17, 2016. The first entry appears to indicate that a jury trial was held, although docket does not reflect any decision by the court. Another entry for November 17, 2016, however, reflects that a "Status Review" hearing was continued to January 12, 2017.

From November 2016 to March 2017, the docket reflects that the Malden District Court held at least five additional "Status Review" hearings, although the hearings were conducted by three different judges. During his testimony, the Debtor stated that he appeared at the Status Review hearings and that Attorney Gainor, on behalf of Goshen, also appeared at the hearings. No witnesses testified as to the substance of what occurred during the "Status Review" hearings, and no transcripts or audio recordings were introduced into evidence at trial. Although the docket reflects that Status Review hearings were held and continued, the court did not enter any orders affecting the Debtor at the hearings other than continuances. The docket further reflects that, on March 8, 2017, Judge Yee held a

19

Status Review hearing and entered the following order:  "After hearing on the status of the bankruptcy proceeding US Bankruptcy Court #16-13549 (D. Mass.) before Furey, J., [sic][14] the eviction summary process action is hereby stayed until the plaintiff obtains relief from the stay or the stay is no longer in effect."  It is unclear from the docket who scheduled the hearings or why they were scheduled in the first place.

The Debtor testified that Attorney Gainor argued to the Malden District Court at one or more of the hearings that the Debtor's Chapter 13 case was "a fake bankruptcy."  Although Goshen argues in its brief that the Status Review hearings were related to Goshen's judgments against the Debtor's adult children, the scope of the hearings, as noted, is unclear because of the absence of evidence in the form of transcripts or audio recordings, and no witness testified in any detail about what happened during the proceedings.   The Debtor simply testified in a conclusory manner that Goshen "dragged him into court."  In addition, he testified that during the Fourth Eviction Action, he was living in Unit 1.  At the time of trial, however, the Debtor testified he was living in Unit 2.

During his testimony at the trial of this contested matter, the Debtor made reference to an action which was commenced by Goshen against him for criminal trespass, although neither party explained the details of, or introduced documents about, that case.  The Debtor stated that the criminal trespass case was dismissed.

---

[14]  Presumably, this is a mistaken reference to the undersigned.

According to the Debtor, he had to hire two lawyers, one of which was a criminal defense lawyer, to represent him in the Fourth Eviction Action and the criminal action at a cost to him of more than $10,000.00. He also stated that, as a result of the eviction action, he is unable to sleep or eat, his blood pressure and epilepsy conditions have worsened, and that he is worried for his children.

On cross-examination, the Debtor conceded that he never raised as a defense in any eviction action that the condominium or mortgage documents were forged by Attorney Braese. He testified generally that he complained about Harmon Law Offices to the Massachusetts Attorney General for "illegal eviction" and stated that "she sued them."

## IV. POSITIONS OF THE PARTIES[15]

A. <u>The Debtor</u>

The Debtor contends that the postpetition events in the Fourth Eviction Action constituted willful violations of the automatic stay imposed by 11 U.S.C. § 362(a)(1), (3), and (6) by Goshen because it had notice of the pendency of this bankruptcy case. He asserts that actual and punitive damages for the stay violations are warranted because of the intentional and repeated stay violations. The Debtor maintains that the exceptions to the automatic stay set forth in 11 U.S.C. § 362(b)(22) and (23) are not applicable here as the proceeding does not involve a lessor seeking to evict the Debtor under a residential lease or rental

---

[15] The Court observes that in their briefs both counsel for Goshen and the Debtor made reference to facts that were not in evidence.

agreement.  The Debtor also points out that no judgment was entered against him

in the Fourth Eviction Action prior to the commencement of his Chapter 13 case.

He asserts that the automatic stay protected his possessory interest in the property

as a post-foreclosure occupant.  According to the Debtor, he was required to attend

the Status Review hearings conducted by the Malden District Court which

violated the automatic stay.   Because Goshen never obtained relief from the

automatic stay to continue in the Fourth Eviction Action, he contends that the

continuation of that action violated the automatic stay.

The Debtor continues to complain that the foreclosures of the mortgages on

the Property were wrongful.  He points to the absence of evidence of compliance

with foreclosure requirements.   Finally, the Debtor seeks the imposition of

damages in the sum of $13,000.00 in attorneys' fees he incurred for attending

hearings in the Malden District Court and twice that amount for emotional

distress, an award of punitive damages, as well as attorney's fees incurred in

litigating this contested matter.

B. <u>Goshen</u>

At the outset, Goshen maintains that the Debtor, as the moving party, had

the burden of proving, by a preponderance of the evidence, that a violation of the

automatic stay occurred, that the automatic stay violation was willfully caused by

Goshen, and that the Debtor suffered damage as a result of the violation.  Goshen

further argues that there was no violation of the automatic stay because the Debtor

had no interest or possessory rights to the Property at the commencement of this

22

case due to the eviction judgments.  Goshen also maintains that the Debtor is barred from re-litigating his claims of wrongful foreclosure because he did not prevail on any of those claims in the eviction actions involving Units 1 and 2. According to Goshen, the Debtor is a trespasser and the continuation of the eviction action was not stayed.  Moreover, it contends that any action by it in continuing to evict him was excepted from the automatic stay under 11 U.S.C. § 362(b)(22).  Goshen also contends that the Debtor was not a credible witness and that his version of events regarding the Property lacked candor and was contrary to historical facts and documents.

Goshen also argues that under the "Rooker-Feldman" doctrine[16] and principles of issue preclusion, the two prior judgments of the Malden District Court are final, and this Court is barred from reviewing the decisions of the state court in which the Debtor was divested of possession of the Property.  According to Goshen, the Debtor is barred from re-litigating the issues surrounding possession and his claims for wrongful foreclosure.

---

[16]  According to the United States Supreme Court in Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005), the Rooker–Feldman doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284.  Thus, the Rooker-Feldman doctrine bars this Court from acting as an appellate tribunal with respect to final state court judgments as it "'strip[s] federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions.'" In re Sanders, 408 B.R. 25, 33 (Bankr. E.D.N.Y. 2009)(quoting Book v. Mortg. Elec. Registration Sys., 608 F. Supp.2d 277, 288 (D. Conn. 2009), and Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005)).

Goshen further asserts that even if there was a stay violation, it was a de minimis violation as the docket reflects only Status Review hearings.  Finally, it argues that the Debtor did not introduce any credible evidence of damages resulting from any stay violation and, if the Court were to find a stay violation, any award of damages should be minimal.

## V. DISCUSSION

### A. <u>Applicable Law</u>

The automatic stay imposed by 11 U.S.C. § 362(a) prohibits certain actions against a debtor once a bankruptcy case is commenced and § 362(b) sets forth certain exceptions to the automatic stay.  Section 362(a) provides, in pertinent part, that a bankruptcy petition "operates as a stay, applicable to all entities of –

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim of against the debtor that arose before the commencement of the case under this title;

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

> (3) any act to obtain possession of the estate or of property from the estate or to exercise control over property of the estate; . . .

> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;"

11 U.S.C. § 362(a)(1), (2), (3), and (6).

Subsection (b) of §362 sets forth certain exceptions to the automatic stay.

Goshen asserts the applicability of subsection (b)(22) which excepts from the

automatic stay the following:

> [T]he continuation of any eviction, unlawful detainer action, or
> similar proceeding by a lessor against a debtor involving residential
> property in which the debtor resides as a tenant *under a lease or rental
> agreement* and with respect to which the lessor has obtained before
> the date of the filing of the bankruptcy petition, a judgment for
> possession of such property against the debtor."

11 U.S.C. § 362(b)(22).

The protections afforded by the automatic stay are well established and

have been described as "among the most basic protections under bankruptcy law,"

stopping all collection efforts, all harassment and all foreclosure actions. *See* Soares

v. Brockton Credit Union (In re Soares), 107 F.3d 969 (1st Cir. 1997).

> The stay springs into being immediately upon the filing of a
> bankruptcy petition: "[b]ecause the automatic stay is exactly what
> the name implies-'automatic'-it operates without the necessity for
> judicial intervention." Sunshine Dev., Inc. v. FDIC, 33 F.3d 106, 113
> (1st Cir. 1994). It remains in force until a federal court either disposes
> of the case, *see* 11 U.S.C. § 362(c)(2), or lifts the stay, *see* id. § 362(d)-
> (f). This respite enables debtors to resolve their debts in a more
> orderly fashion, *see* In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994), and
> at the same time safeguards their creditors by preventing "different
> creditors from bringing different proceedings in different courts,
> thereby setting in motion a free-for-all in which opposing interests
> maneuver to capture the lion's share of the debtor's assets." Sunshine
> Dev., 33 F.3d at 114; *see generally 3 Collier on Bankruptcy* ¶ 362.03 (15th
> rev. ed. 1996).

In re Soares, 107 F.3d at 975.

Actions taken in violation of the automatic stay are void, Soares, 107 F.3d

at 976, as are default judgments entered in an action if the commencement or

prosecution of which violated the automatic stay.  Goulet v. GMAC Mortg., LLC

(In re Goulet), No. 13-41812-MSH, 2015 WL 269269, at *7 (Bankr. D. Mass. Jan. 21,

2015) (citing In re Weber, 283 B.R. 630, 635 (Bankr. D. Mass. 2002)).  According to

the court in Goulet,

> Although only the bankruptcy court in which a bankruptcy case is
> pending may terminate the automatic stay in that case, state courts
> in which litigation is pending have jurisdiction to determine whether
> the automatic stay applies. Martinez v. Buckley (In re Martinez), 227
> B.R. 442, 444–45 (Bankr. D. N.H. 1998). "A Congressional grant of
> exclusive jurisdiction to the federal courts includes the implied
> power to protect that grant." Gonzales v. Parks, 830 F.2d 1033, 1036
> (9th Cir.1987). As a result, if a state court concludes there is no stay
> but the bankruptcy court disagrees, the bankruptcy court's
> conclusion controls as it renders any action by the state court taken
> in violation of the automatic stay void *ab initio*. Chao v. Hospital
> Staffing Servs., Inc., 270 F.3d 374, 383 (6th Cir. 2001); Raymark Ind.,
> Inc. v. Lai, 973 F.2d 1125, 1132 (3d Cir.1992).

In re Goulet, 2015 WL 269269, at *7.

The automatic stay, however, does not prohibit the continuation of

ministerial, clerical actions by a state court that do not call for the exercise of

discretion or judgment by a state court's officials.   In re Soares, 107 F.3d at 974.

Moreover, the automatic stay applies only to actions against a debtor, and does

not apply to non-debtors or to debtor-instituted proceedings. *See* Joan N. Feeney,

Michael C. Williamson, Michael J. Stepan, BANKRUPTCY LAW MANUAL, §7.5, at

1543 (5th ed. 2017).

The automatic stay prevents the unilateral continuation of an eviction

action after a foreclosure by a mortgagee, and it is necessary for a party who is

seeking to continue a post-foreclosure eviction to seek relief from the automatic

stay to continue with the eviction action after the commencement of a bankruptcy case.  *See* <u>In re Kim</u>, 554 B.R. 304 (Bankr. D. Mass. 2016); <u>In re Sullivan</u>, 551 B.R. 868 (Bankr. D. Mass. 2016) (holding that a debtor's bare possessory interest in realty is property of the estate that is protected by the automatic stay even if the realty itself is not property of the estate."); <u>Cuffee v. Atl. Bus. & Cmty. Dev. Corp. (In re Atl. Bus. & Cmty. Corp.)</u>, 901 F.2d 325, 328 (3d Cir.1990).  *Contra* <u>Eden Place, LLC v. Perl (In re Perl)</u>, 811 F.3d 1120, 1130 (9th Cir.), *cert. denied sub nom*. <u>Perl v. Eden Place, LLC</u>, __ US. __, 137 S. Ct. 39 (2016) ("The unlawful detainer judgment and writ of possession . . . bestowed legal title and all rights of possession upon Eden Place.  . . . Thus, at the time of the filing of the bankruptcy petition, Perl had been completely divested of all legal and equitable possessory rights that would otherwise be protected by the automatic stay.").  The exception to the automatic stay for evictions under 11 U.S.C. § 362(b)(22) does not apply to evictions of occupants who are holding over after foreclosure and who do not have a lease or rental agreement.  *See* <u>In re McCray</u>, 342 B.R. 668, 669 (Bankr. D. D.C. 2006).

Section 362(k) provides a remedy for stay violations and provides in pertinent part:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k).   "A debtor alleging a violation of the automatic stay has the burden to demonstrate, by a preponderance of the evidence, that a violation of the

automatic stay has occurred, that the violation was willfully committed by the respondent, and that the debtor suffered damage as a result of the violation." <u>In re Kim</u>, 554 B.R. at 312 (citing <u>In re Panek</u>, 402 B.R. 71, 76 (Bankr. D. Mass. 2009)). "'A violation is willful if a creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case.'" <u>In re Kim</u>, 554 B.R.at 313 (quoting <u>Laboy v. Doral Mortg. Corp. (In re Laboy)</u>, 647 F.3d 367, 374 (1st Cir. 2011), and <u>In re McMullen</u>, 386 F.3d 320, 330 (1st Cir. 2004) (internal quotations omitted)). Specific intent to violate the automatic stay is not required, only an intent to perform the act that violates the stay. <u>Kim</u>, 554 B.R. at 313 (citing <u>Fleet Mortg. Grp. v. Kaneb</u>, 196 F.3d 265, 269 (1st Cir. 1999)).

    B. <u>Analysis</u>

    In the present case, the Court finds that the Debtor did not establish a willful violation of the automatic stay by Goshen with respect to the Fourth Eviction action after the commencement of the Debtor's case as a result of the Status Review hearings that were conducted by the Malden District Court. Specifically, the Debtor failed to submit any convincing evidence that Goshen took any actions in violation of the automatic stay. He did not submit evidence that Goshen was responsible for scheduling the various hearings that took place in the Malden District Court after he commenced his Chapter 13 case; he did not submit any evidence of any actions that Goshen took or representations or arguments that Goshen through its counsel may have made at the hearings that took place in the

Fourth Eviction action.  In sum, he fell far short of his burden of proof under §

362(k).  *See* <u>In re Kim</u>, 554 B.R. at 312.

The Debtor complained vociferously about actions taken by Goshen prior

to the commencement of his case, including the institution of criminal

proceedings, and he complained about moneys that he had to expend to obtain

representation. Those actions by Goshen were not prohibited by the automatic stay

as it was not in effect, and monies expended by the Debtor to defend prepetition

actions are not compensable.  The Court found the Debtor's testimony to be

evasive and unreliable.  The Debtor moved between Units 1 and 2 over the course

of the various eviction actions and has made no mortgage payments or use and

occupancy payments since 2009.  He has no legal or equitable interest in the

Property, except a bare possessory interest.

The Fourth Eviction action, which Goshen initiated before the Debtor

commenced his Chapter 13 case, was stayed as to the Debtor only upon

commencement of his case as it was a judicial action against the Debtor.  As of the

petition date, no judgment had entered against the Debtor.  Judgments had

entered against the other defendants before the commencement of the Debtor's

case and the filing of his Suggestion of Bankruptcy.  The judgment that was

entered by the Malden District Court on September 16, 2016 was against the non-

debtor defendants identified as "Mohamed, Anwar and Sabah, Anwar" only; the

Malden District Court did not enter a judgement against the Debtor.

Goshen was on notice of the filing of the Debtor's bankruptcy petition and the automatic stay, at least as of September 21, 2016 when the Debtor filed a Suggestion of Bankruptcy.  There was no evidence that Goshen took action to continue the proceedings in the Fourth Eviction Action in Malden District Court. The Debtor filed an Answer to the summary process complaints; his adult children did not and they were defaulted.  On October 6, 2016, the Malden District Court docket reflects that a motion to remove default, presumably filed by the Debtor's adult children, was filed and denied on October 6, 2016 when a "Status Review" hearing was scheduled by the court.  In addition, the court heard a "[m]otion to assess damages (Mass. R. Civ. P. 55(b)(4)," granted that motion and entered judgment against the Debtor's adult children.  The Debtor did not submit, as an exhibit, the motion to assess damages but it would not have applied to him as he had not been defaulted.[17]  Accordingly, there is no evidence that Goshen sought or even could seek damages from him under Mass. R. Civ. P. 55.  Moreover, the evidence does not establish that Goshen was responsible for scheduling any hearings in the Malden District Court as the docket reflects that it did not file any motions after October 6, 2016.  Indeed, the Debtor was the only party who filed pleadings with the Malden District Court after he filed a Suggestion of Bankruptcy as he filed a motion for reconsideration on October 17, 2016.  The docket does not reflect any reasons for the court's Status Review hearings and, as noted above, no

---

[17] Mass. R. Civ. P. 55 pertains to defaults.

party introduced evidence at the trial as to the reasons the court scheduled those hearings or what transpired during them.

The only inferences that can be drawn from the Debtor's sole exhibit, the Malden District Court docket, is that Status Review hearings were automatically scheduled as ministerial acts for tracking purposes or that the court itself scheduled the hearings for one of two reasons: either because the automatic stay had no effect on the eviction proceedings against the non-debtors, or because the Debtor had filed his own motion for reconsideration of an order after the commencement of his bankruptcy case and after he filed a Suggestion of Bankruptcy. The Malden District Court entered no orders affecting the Debtor in the Fourth Eviction Action until Judge Yee determined in March 2017 that the action would be stayed.

The Debtor, in his brief, misinterprets the docket entries in the Fourth Eviction Action. The Debtor argues that the docket "shows unambiguously" that Goshen filed papers to obtain a judgment of possession on September 16, 2016 and filed papers on October 6, 2016 to assess damages against him. The docket reflects no such thing as set forth above. The September 16, 2016 docket entry indicates a judgment for possession, not against the Debtor, but against "Mohamed, Anwar/Sabah, Anwar." As for the October 6, 2016 entry, it is unclear which defendant was the subject of the motion to assess damages under Mass. R. Civ. P. 55(b)(4) as the motion was not introduced at trial, but, as noted above, the Debtor's children failed to answer the complaint and were defaulted. The Debtor, however,

31

filed an answer and, thus could not logically be the subject of a default for failure

to "plead or otherwise defend." *See* Mass. R. Civ. P. 55(a).

Although the Debtor has made certain allegations that the foreclosure of the

Property was wrongful, those issues are not relevant to this contested matter. The

Debtor's equity of redemption was foreclosed years ago.   Moreover, he was not

the owner of Unit 1.   He has not challenged the foreclosure in this case, although

the Court gave him a deadline for filing an adversary complaint to properly raise

those claims, even though he failed to list them on either his original or amended

Schedule A/B.   Moreover, there is no dispute that he raised claims of wrongful

foreclosure in the eviction action relating to Unit 1 in the Malden District Court,

which granted judgment of eviction for the plaintiff, presumably finding against

the Debtor on any claims of wrongful eviction.   *See* <u>Brandao v. Fed. Nat'l Mortg.</u>

<u>Ass'n (In re Brandao)</u>, 567 B.R. 396, 404 (Bankr. D. Mass. 2017) (observing that "the

Massachusetts Supreme Judicial Court [has] clarified that under the current

jurisdictional statutes and procedural rules enacted since the 1970s, Massachusetts

courts hearing summary process actions *do* have jurisdiction to hear defenses and

counterclaims that challenge the title of the post-foreclosure summary process

plaintiff, such as claims based on a lack of good faith in the foreclosure process.");

<u>Bank of America, N.A. v. Rosa</u>, 466 Mass. 613, 626, 999 N.E.2d 1080, 1089 (2013).

## VI. CONCLUSION

The Court concludes that the Debtor failed in his burden of proof as to a

stay violation and entitlement to damages under 11 U.S.C. § 362(k).  Accordingly,

the Court denies the Debtor's Stay Violation Motion.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  February 27, 2016